# LEGRI S RESISTOR CORP v DALE ELECTRONICS, INC.

## Case No. CL 88-5098 AJ

Fifteenth Judicial Circuit, Palm Beach County

February 14, 1990

### APPEARANCES OF COUNSEL

**Charles H. Lichtman, Esquire**

**James R. Merola, Esquire**

### OPINION OF THE COURT

MARY E. LUPO, Circuit Judge.

### *FINAL JUDGMENT FOR DEFENDANT*

This case came before the court for non-jury trial on January 16, 17, and 18, 1990. The plaintiff took a voluntary dismissal of Count III of the amended complaint. The court dismissed Counts IV and V with prejudice.

Count I, breach of contract, and Count II, breach of implied warranty of fitness, remain.

On or about January 7, 1976, Legri S Resistor Corp. and defendant

Dale Electronics, Inc. entered into a Distributor Agreement. On October 15, 1986, Dale terminated the agreement.

Count I of Legri's amended complaint alleges breach of contract. It is undisputed that the contract provides that either party had the right to terminate the agreement without cause at any time by giving 30 days notice. The agreement also cites specific factors allowing Dale to terminate at any time with cause. The first issue before the court is whether the termination was with or without cause.

Paragraph 11 of the agreement contains the "termination-with-cause" provision. In pertinent part, it states:

> Should the Distributor at any time during the period of this agreement fail to maintain sufficient sales personnel, facilities and inventories as may be reasonably determined by the Company,. . .then and in such event, the Company may at its option, immediately terminate this contract for cause upon giving written notice.

On March 10, 1986, Dale's Distributor Sales Manager, Jerry Jilek, advised Grinn that Legri's run-rate for 1986 was below $25,000, and that distributors were expected to operate at a minimum sales level of $50,000 a year (P #3). Jilek gave Legri until June, 1986 to increase its purchases from Dale; failure to do so could result in Legri's termination as a Dale distributor.

On October 15, 1986, Jilek informed Grinn that since Legri's sales volume had not increased since the March 10, 1986 letter, the agreement was terminated effective December 1, 1986 (P #2). At trial, the parties stipulated that the $50,000 sales level was not reached. On November 3, 1986, Jilek informed Grinn that the termination was "for cause" due to insufficient sales (P #8).

Legri argues that the termination, though designated as "with cause," was actually without cause, since insufficient sales was not an expressly enumerated reason for termination in paragraph 11. The court rejects Legri's position as contrary to the weight of the evidence and the law of contracts.

Plain reading of the agreement in its entirety shows that its essential purpose was that Legri, as an authorized distributor, would sell Dale's product and maintain a sufficient inventory. Paragraphs 2, 3, 4, 6, 7 and 11 of the agreement make this clear. Failure to maintain sufficient inventory is an expressed ground for termination of the agreement with cause. Maintaining inventory is directly related to Jilek's March 10, 1986 letter that ties the distributor pricing agreements to a $50,000 minimum purchase. Kolas testified that the sales minimum justifies the distributor's special pricing and Dale's costs.

174

Grinn admitted that Legri did not meet the $50,000 sales quota. Grinn also admitted that Legri did not "turn" its inventory, nor did it choose to. The evidence shows that Legri maintained an insufficient inventory of Dale product, justifying terminating of the distributorship with cause.

The court must read the agreement in its entirety in order to construe its intent. The fact that Dale's correspondence uses the term "sales" instead of "inventory" is immaterial and merely an issue of semantics. Although Jilek's letter terminating Dale used the word "sales," he referred to sales and inventory issues and said the termination was pursuant to paragraph 11. "Sales" means making purchases of and maintaining a sufficient inventory of Dale product. Sales from Dale constitutes inventory to Legri. The agreement in its entirety, including paragraphs 2, 3, 4, 6, 7 and 11, reflects the parties' intent that Legri maintain a sufficient inventory of Dale product, and that its failure to do so could result in termination of the distributorship. The inventory return provisions in the agreement are enforceable, and the parties are bound to them.

Shortly after termination, Dale exercised its option to repurchase that portion of Legri's inventory which fell within paragraph 7. Dale issued Legri a return merchandise authorization number. Legri disputed what inventory Dale should repurchase. A series of letters dated December 19, 1986 (P #13), January 12, 1987 (P #14), January 16, 1987 (P #15), January 22, 1987 (P #16), January 28, 1987 (P #17), January 27, 1987 (P #18), and February 2, 1987 (P #19), reflect that Dale told Grinn that it would repurchase inventory that fell within the guidelines of paragraph 7. Grinn rejected Dale's position, asserting instead that Dale had to take back all of Legri's inventory as listed on the 115 page report. Legri never returned any portion of its inventory to Dale; the stock has remained in Legri's warehouse since termination.

During the fall of 1986, Dale recalled certain of its product labeled MIL R-55182 and MIL R-39017. Legri submits that all MIL R-55182 and MIL R-39017 ever manufactured by Dale was defective and returnable. Evidence does not show that all product was recalled. Dale's letter of October 10, 1987 is consistent with the Alert dated November 20, 1986.

Count II is for breach of implied warranty of fitness for use for a particular purpose. The plaintiff claims that the electronic components sold by Dale to Legri would be saleable to ultimate users for military purposes. This claim fails for legal reasons.

An implied warranty can only be founded on an unwritten contract.

**175**

If there is a written contract, there can only be an express warranty, not an implied warranty. *Creviston v General Motors,* 210 So.2d 755 (Fla. 2d DCA 1968). Since in this case there is a written contract without an express warranty for military resale, the claim of an implied warranty of fitness for a particular purpose fails.

The court must address the issue of damages on Count I. One category of damages is the amount of the recalled product that Dale was going to repurchase irrespective of the agreement's termination. The other category is the amount of inventory returnable for termination with cause under paragraphs 7 and 11. To support its damage claim, Legri prepared a summary to its inventory report (P #27).

With respect to the partially-recalled product, MIL R-55182 and MIL R-39017, the damage summary fails to itemize how much of the product fails within the October 10, 1986 letter (P #25) and the Alerts. The court cannot determine what amount of recalled product remains in Legri's inventory. Grinn testified that he had no idea how much of the product existed in his stock, only that Legri had some. Legri has not offered competent evidence showing how much recalled MIL R-55182 and MIL R-39017 it has. The plaintiff must show damages in a definite amount, and the amount must be shown with a reasonable certainty. *United Steel and Strip Corp. v Monex,* 310 So.2d 339 (Fla. 3d DCA 1975). Since the plaintiff bears the burden of proof and cannot show with any degree of certainty what amount of recallable inventory it holds, the court must exclude this category of damages.

With respect to the inventory returnable upon termination of the agreement, Legri calculates its damages relying upon the inventory summary. The "Red" column itemize product within the five year date code and on the DSSL. The "Red" column totals $36,997.33. Crediting Dale the 17% provided under paragraphs 7 and 11, Legri's damages are $30,707.78.

The defendant claims that Legri is estopped by its own actions following termination of the agreement from recovering damages in any amount. The evidence clearly shows that if Dale did not take back all of Legri's inventory, Grinn refused to send any of it back. Legri never returned to Dale any of the recalled product or the undisputed portion of the inventory from the "Red" column despite repeated requests by Dale. Over three years have passed since the agreement was terminated; much of the inventory is now useless and not resaleable by Dale.

Legri was obligated to return the "Red" column portion of the

176

inventory to Dale. Since the inventory is now worthless, it is unfair to require Dale to repurchase it. Initially Dale exercised its option under paragraph 11 to repurchase the inventory, but due to the passage of time and the circumstances of this lawsuit, combined with Legri's actions in not sending the inventory, that option has been withdrawn. The plaintiff cannot sit back and allow his product to deteriorate, expecting that he will be later compensated in full. At a minimum, Legri had the duty either to return the uncontested portion of the inventory to Dale or to attempt to sell it for non-military application.

Since Legri did not return to Dale the undisputed portion of the inventory, and made no attempt to sell the inventory, Legri failed to mitigate its damages. Legri is not entitled to a damage award.

It is hereby ORDERED AND ADJUDGED that Legri S Resistor Corp., a Florida corporation, shall recover nothing from Dale Electronics, Inc. and Dale Electronics, Inc. shall go forth hence without day.

The court reserves jurisdiction to assess attorney's fees and costs upon motion and hearing.

DONE AND ORDERED this 14th day of February, 1990 in chambers at West Palm Beach, Palm Beach County, Florida.